FILED BY ___ D.C.

SEP 2 6 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. PIERCE DIVISION

| | |
|---|---|
| ALISA MARIE LYNCH, and ) <br> PETER JAMES LYNCH, ) <br>               Plaintiffs, ) <br>    v. ) <br> ) <br> ) <br> ) <br> TANISHA BAILEY-ROKA, in her ) <br> official capacity as Virgin Islands ) <br> Chief Disciplinary Counsel, and in ) <br> her Individual Capacity, and ) <br> MICHAEL DAVID HOLZKNECHT, ) <br> in his former, official capacity as ) <br> Virgin Islands Special Designated ) <br> Disciplinary Counsel, and in his ) <br> Individual Capacity, and ) <br> LEE JEANNETTE ROHN, and ) <br> LEE J. ROHN & ASSOCIATES, LLC, ) <br>               Defendants. ) | Case No: _____ <br><br> COMPLAINT FOR <br> DAMAGES, <br> DECLARATORY JUDGMENT. <br> AND INJUNCTIVE RELIEF <br><br><br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

COME NOW the Plaintiffs, Alisa Marie Lynch ("Alisa"), *pro se*, and Peter James Lynch ("Pete"), *pro se*, and Complain of the acts and omissions of the Defendants, Demand a Jury Trial, and say:

1.  This Court has diversity jurisdiction, as the amount in controversy exceeds $75,000.00, and there is complete diversity of citizenship between Plaintiffs and Defendants.

2.  This Court has federal question jurisdiction, as the Verified Complaint contains federal causes of action, and the Defendants' activities purporting to provide legal services and conduct attorney business across state lines in Florida involve a stream of interstate commerce.

3. This Court possesses supplemental jurisdiction over the state claims, as they derive from the same transactions, and the same nucleus of operative facts, as the federal claims.

4. Venue is proper, because all the Defendants purposefully and voluntarily directed their actions complained of toward the Plaintiffs in this forum, crossing state lines to cause harm to Alisa and Pete in Florida.

5. Alisa is a citizen of Florida.

6. Pete is a citizen of Florida.

7. Defendant Lee Jeanette Rohn ("Rohn") is a citizen of the Virgin Islands.

8. Defendant Lee J. Rohn & Associates, LLC (the "Rohn firm") is a citizen of the Virgin Islands.

9. Defendant Michael David Holzknecht ("Holzknecht"), in his official and individual capacities, is a citizen of Missouri.

10. Defendant Tanisha Bailey-Roka ("Bailey-Roka"), in her official and individual capacities, is a citizen of the Virgin Islands.

11. Alisa sought representation for her Florida divorce from Pete.  (05-21-DR-027999).

12. Although not licensed to practice law in Florida, and not a divorce lawyer, Defendant Rohn emailed Alisa in Florida "I will help you."

13. Rohn involved herself and the Rohn firm in Alisa's Florida divorce by hiring a process server to serve the summons and complaint on Pete, and filing a notice in the Florida divorce court, attaching the affidavit of service.

14. Rohn failed to timely disclose to Alisa that, since 2018, in the Virgin Islands, Rohn had instigated attorney grievances against Pete, that Rohn was Pete's opposing counsel (ST-2018-CV-00065), and that Pete was suing Rohn (ST-2018-CV-00259) in civil actions in the Virgin Islands.

15. By "helping" Alisa, Rohn actually intended to help herself in her own dealings against Pete, completely unrelated to the Florida divorce.

16. Rohn put her own interests ahead of Alisa's, with conscious disregard that her actions would be substantially certain to harm Alisa.

17. On April 26, 2021, without Alisa's advance knowledge or consent, Rohn disclosed Alisa's confidential client communications, containing adverse information about Pete, to Holzknecht, by email.

18. Rohn failed to fact check the adverse information about Pete, contained in Alisa's confidential client communications, she sent to Holzknecht.

19. Without informing Alisa that Holzknecht was not working for Rohn's office, but was actually the Virgin Islands Deputy Disciplinary Counsel, Rohn encouraged Alisa to communicate with Holzknecht.

20. Starting on or about April 26, 2021, Holzknecht, who is not licensed to practice law in Florida, reached out from Missouri to Alisa in Florida by telephone, voicemail, text messages, email, and U.S. Mail.

21. Holzknecht failed to timely disclose to Alisa that he did not work for Rohn, or that he was Virgin Islands Deputy Disciplinary Counsel, or that, since 2019, he had been investigating an attorney disciplinary complaint against Pete instigated by Rohn, that was unrelated to the divorce, or that he had just filed a formal petition for discipline against Pete on April 26, 2021.

22. Although Holzknecht knew or should have known that Rohn's disclosure of Alisa's confidential client communications to him was improper, he nevertheless forwarded it to Bailey-Roka, Virgin Islands Chief Disciplinary Counsel.

23. Holzknecht failed to fact check the adverse information about Pete, contained in Alisa's confidential client communications, he sent to Bailey-Roka.

24. On or about March 14, 2022, although she knew or should have known that it was improper to do so, in the course of assisting a grievant in drafting a complaint against another attorney, Bailey-Roka publicly disclosed a confidential document filed in the disciplinary case against Pete.

25. Within 90 days of the tortious acts of Holzknecht and Bailey-Roka, Pete served tort claim notices on the Virgin Islands Governor and Attorney General, pursuant to the provisions of the Virgin Islands Tort Claims Act, 33 V.I.C. 3409 et seq.

**Count I – Legal Malpractice, Harming Client Alisa, as to Attorney Rohn and Lee J. Rohn & Associates, LLC**

26. All foregoing allegations are reasserted and realleged, as though fully set forth herein.

27. By taking on the representation of Alisa, Atty Rohn and Lee J. Rohn & Associates, LLC, incurred duties to Alisa, including the duty of loyalty, the duty to disclose, and the duty to keep client communications confidential.

28. In material breach of their duty to disclose, Atty Rohn and Lee J. Rohn & Associates, LLC failed to disclose to Alisa that Rohn had instigated attorney grievances against Pete in the Virgin Islands, that Pete had sued them in case ST-2018-CV-00259, and that Pete was their opposing counsel in case ST-2018-CV-00065.

29. In material breach of their duty to Alisa of confidentiality, Atty Rohn and Lee J. Rohn & Associates, LLC deliberately disclosed information, obtained from confidential client communications with Alisa, to Atty Holzknecht, a third party, outside the firm of Lee J. Rohn & Associates.

30. Atty Rohn and Lee J. Rohn & Associates, LLC purposefully made the disclosures to Atty Holzknecht, in their own interests, intending that such disclosures would result in charges or complaints against Pete, a Virgin Islands attorney, and were likely to cause Pete's law license to be suspended, and were likely to cause Pete's income to decrease substantially.

4

31. Atty Rohn and Lee J. Rohn & Associates, LLC violated their duty of loyalty to Alisa, because they failed to abide by Alisa's instructions that she did not want a divorce, and placed their own interests in destroying Pete over their client's interests.

32. Also, Atty Rohn and Lee J. Rohn & Associates, LLC placed their own interests ahead of their client Alisa's; unknown to Alisa, they separately sought to obtain a judgment against Pete, and filed an ethics complaint against Pete, seeking to get Pete's law license suspended.

33. Atty Rohn and Lee J. Rohn & Associates knew that, since Pete was the sole breadwinner in Alisa's household, the anticipated result they were seeking to achieve against Pete would be substantially certain to harm Alisa, whether, in the event of a final divorce, by damaging Pete's ability to pay spousal support or alimony, or, in the event that Pete and Alisa were to reconcile, by decreasing the available income to Alisa's household.

34. Atty Rohn's and Lee J. Rohn & Associates, LLC's unauthorized disclosures did cause Pete to forego substantial, remunerative legal work, to instead devote time to defend and preserve his law license, lessening the available income to Alisa's household.

35. By their actions, Atty Rohn and Lee J. Rohn & Associates, LLC placed their own personal objective to destroy Pete ahead of their duty to represent and protect the interests of their client, Alisa.

36. As well as diminution of Alisa's household income, Atty Rohn's and Lee J. Rohn & Associates, LLC's actions caused Alisa severe embarrassment, humiliation, anger, and severe emotional stress.

37. The increased stress put upon Alisa by Rohn and the Rohn firm manifested itself physically by causing a severe flare up of colitis, and related medical conditions.

38. Atty Rohn's and Lee J. Rohn & Associates, LLC's wrongful actions were negligent, but also went far beyond negligence, because they intentionally, knowingly, and deliberately violated their position of trust to put their own interests ahead of their client's.

39. Atty Rohn's and Lee J. Rohn & Associates, LLC's wrongful actions constituted legal malpractice of the worst kind, because it was intentional.

40. Because Atty Rohn's and Lee J. Rohn & Associates, LLC's legal malpractice was intentional and deliberate, it entitles Alisa to punitive damages.

**Count II – Legal Malpractice, Harming Client Alisa, as to Atty Holzknecht, in his Individual Capacity**

41. All foregoing allegations are reasserted and realleged, as though fully set forth herein.

42. Atty Rohn provided to Atty Holzknecht Alisa's telephone number, email, and mailing address.

43. Beginning in April, 2021, Atty Holzknecht reached out to Alisa in Florida by telephone calls, voicemails, and text messages.

44. Ultimately, after prompted by Atty Rohn, Alisa responded to Atty Holzknecht by returning his call.

45. Alisa reasonably believed that Atty Holzknecht worked for Atty Rohn and Lee J. Rohn & Associates, LLC.

46. Atty Holzknecht had a duty, at the outset, as an attorney, to disclose to Alisa, and to make certain she understood, that he did not represent her.

47. Atty Holzknecht also had a duty not to deceive Alisa.

48. Atty Holzknecht did not timely inform Alisa that he did not represent her.

49. Before he disclosed his role to Alisa, Atty Holzknecht obtained, and disclosed to Atty Bailey-Roka, significant, personal, confidential information about Alisa, Pete, and their divorce matter,

through conversations and written correspondence, which Alisa reasonably believed were private, and not to be shared outside of the law firm Lee J. Rohn & Associates, LLC.

50. Not until July 4, 2021, when Alisa directly asked him what his role was in her divorce, did Atty Holzknecht inform her that he was Deputy Disciplinary Counsel, and cause her to understand that he was not an attorney working with Atty Rohn and Lee J. Rohn & Associates, LLC.

51. By his foregoing actions, Atty Holzknecht breached his duty to timely disclose to Alisa that he did not represent her, and breached his duty not to deceive Alisa.

52. Atty Holzknecht also had a duty not to harm Alisa.

53. Atty Holzknecht placed his own interest in imposing attorney discipline on Pete ahead of his duty to disclose his role to Alisa.

54. Atty Holzknecht purposefully made unauthorized disclosures of information contained in confidential communications Alisa had with Atty Rohn, concerning her divorce, to Atty Bailey-Roka, in his own interest, and for his own purposes, intending that such disclosures would result in charges or complaints against Pete, as a Virgin Islands attorney, and were likely to cause Pete's law license to be suspended, and were likely to cause Pete's income to decrease substantially.

55. Similarly, Atty Holzknecht purposefully made unauthorized disclosures to Atty Bailey-Roka of information contained in confidential communications he himself had with Alisa, concerning her divorce, before Alisa learned he was not part of Atty Rohn's firm, Lee J. Rohn & Associates, LLC.

56. Atty Holzknecht knew that his actions were substantially certain to harm Alisa, because, since Pete was the only breadwinner, the ruination of Pete he sought to achieve would likely harm Alisa, whether, in the event of a final divorce, by damaging Pete's ability to pay spousal support or alimony, or, in the event that Pete and Alisa were to reconcile, by decreasing the available income to Alisa's household.

57. Atty Holzknecht's unauthorized disclosures did cause a diminution in Alisa's household income, because those unauthorized disclosures occasioned the necessity for Pete to forego substantial, remunerative legal work, to instead defend and preserve his law license, as it was necessary to maintain his livelihood as an attorney, and Pete expended substantial time, energy, emotional energy, and money, to do so, much of which income would otherwise have gone to Alisa.

58. As well as loss of household income, Atty Holzknecht's actions caused Alisa severe emotional stress, which manifested itself physically by causing a severe flare up of colitis, and related medical conditions.

59. Atty Holzknecht's breaches of duty were negligent, but went far beyond negligence, because Atty Holzknecht intentionally, knowingly, and deliberately violated his position of trust to put his own interests ahead of Alisa's.

60. Atty Holzknecht took all of his actions with respect to Alisa in the context of soliciting an attorney grievance against Pete from Alisa, Pete's wife.

61. Atty Holzknecht's actions with respect to Alisa bore no relation to any ongoing attorney grievance investigation or disciplinary action against Pete.

62. Soliciting grievances was not part of Atty Holzknecht's duties as Deputy Disciplinary Counsel.

63. Attorney Holzknecht's actions with respect to Alisa were not "evaluating, investigating, and prosecuting attorney disciplinary complaints," and do not qualify as activities which entitle him to immunity from suit or liability.

64. Atty Holzknecht's actions, harming Alisa, were completely opposite to a primary purpose for which the ODC exists, which is to protect the public.

65. Atty Holzknecht's actions, in deliberate and intentional abuse of his position of authority, were so outrageous that they entitle Alisa to punitive damages against him.

**Count III – Invasion of Privacy, Public Disclosure of Private Facts – Pete & Alisa, as to Atty Rohn, Lee J. Rohn & Associates, LLC, and Atty Holzknecht, in his Individual Capacity**

66. All foregoing allegations are reasserted and realleged, as though fully set forth herein.

67. Atty Rohn, the Rohn firm, and Atty Holzknecht intended to exploit Alisa's need for representation in her divorce for their own purposes.

68. Starting in April, 2021, in the course of Atty Rohn's representation of Alisa, Alisa provided to Atty Rohn, and to the Rohn firm, adverse, private information about herself and her husband, Pete, which information would be highly offensive to a reasonable person.

69. Also, between April and July, 2021, believing that Atty Holzknecht was part of the Rohn firm, Alisa provided to Atty Holzknecht, adverse, private information about herself, and her husband, Pete, which information would be highly offensive to a reasonable person.

70. Alisa did not consent to Defendants' Atty Rohn, or Lee J. Rohn & Associates, LLC, or Atty Holzknecht's disclosure to anyone outside Lee J. Rohn & Associates, LLC, of adverse information about Pete or Alisa or the divorce representation.

71. Atty Rohn and Lee J. Rohn & Associates, LLC, and Atty Holzknecht each intentionally breached their duty to Alisa, by deliberately emailing to third parties information, including adverse and offensive private facts concerning Pete and Alisa, and their marriage, obtained from confidential client communications Atty Rohn and Atty Holzknecht had with Alisa.

72. Atty Rohn intentionally emailed the adverse, confidential information about Pete and Alisa, to Atty Holzknecht, Virgin Islands Deputy Disciplinary Counsel.

73. Atty Holzknecht intentionally emailed the adverse, confidential information about Pete and Alisa, to Atty Bailey-Roka, Virgin Islands Chief Disciplinary Counsel.

74. Atty Rohn's and Atty Holzknecht's wrongful disclosures were specifically and deliberately directed to the persons whom they believed could and would use them to cause the most damage

9

to Pete and Alisa, because Atty Rohn made her wrongful disclosures to Deputy Disciplinary Counsel, and Atty Holzknecht made his wrongful disclosures to Chief Disciplinary Counsel.

75. Atty Rohn, the Rohn firm, and Atty Holzknecht knew that disclosing the foregoing private facts was wrongful, such facts would be highly offensive to a reasonable person, and their disclosure to members of the public, outside the divorce action, would be substantially certain to subject both Pete and Alisa to reputational damage, embarrassment, humiliation, and other harms.

76. Atty Rohn's and Atty Holzknecht's disclosure of the private facts was deliberate, and calculated to cause Pete to capitulate to the attorney discipline Atty Holzknecht sought to impose, to distract Pete from ongoing civil litigation with Atty Rohn, to wear down Pete's financial resources, and to secure for Rohn tactical advantage in the civil litigation, for pecuniary gain.

77. Defendants' Atty Rohn, and Lee J. Rohn & Associates, LLC, and Atty Holzknecht's breach did wear down Pete's financial resources, as the Defendants had intended, harming both Pete and Alisa.

78. The Defendants' public disclosure of facts, which Pete and Alisa intended to keep private, damaged Pete and Alisa, causing reputation and financial harm, and severe emotional distress.

79. By their foregoing actions, Defendants' Atty Rohn, Lee J. Rohn & Associates, LLC, and Atty Holzknecht each engaged in deliberate misconduct, in abuse of their positions of trust, and are deserving of punitive damages.

80. Alisa's damages include damage to personal reputation, mental anguish and severe emotional distress, manifested in colitis, sleeplessness, and financial harm, including lost household income, and punitive damages, in amounts to be proven at trial.

81. Pete's damages include damage to personal and professional reputation, loss of income due to hours spent preparing to defend himself rather than in productive, remunerative legal work,

embarrassment, and severe emotional distress, manifested in stomach aches, sleeplessness, nominal damages, and punitive damages, in amounts to be proven at trial.

### Count IV – Invasion of Privacy, Public Disclosure of Private Facts – Pete & Alisa, as to Atty Bailey-Roka, in her Individual Capacity

82. All foregoing allegations are reasserted and realleged, as though fully set forth herein.

83. Atty Bailey-Roka bears animosity toward Pete, because, on or about August 31, 2020 and March 23, 2021, Pete dared to report to the Virgin Islands Supreme Court, her office's improper collusion with Atty Rohn and her office in attorney disciplinary matters, directly affecting ongoing civil litigation. VI MISC 11/20 and CIV 6/21.

84. As a licensed Virgin Islands attorney, Pete is required by the Virgin Islands Rules of professional conduct to report attorney misconduct when he observes it. V.I. S. Ct. R. 211.8.3.

85. Pete's complaints angered Bailey-Roka, and this anger became the motive for her actions intending to harm Pete. Any harm to Alisa in the process was acceptable, collateral damage.

86. In April and May, 2021, Atty Bailey-Roka corresponded with Alisa in Florida, and personally authorized and approved both Atty Holzknecht's disclosure of Alisa's confidential client communications, with Atty Rohn relative to the divorce, and Atty Holzknecht's solicitation of an attorney grievance against Pete from Alisa, containing adverse information concerning Pete and Alisa, highly offensive to a reasonable person, and not of public concern.

87. Also, in March, 2022, in the course of assisting a grievant in preparing a grievance against another Florida attorney, Atty Bailey-Roka disclosed to the grievant a May, 2021 confidential filing by Atty Holzknecht against Pete in a petition for discipline against Pete, which contained adverse information about Pete, highly offensive to a reasonable person, and not of public concern.

88. As the Virgin Islands' Chief Disciplinary Counsel, Atty Bailey-Roka was well aware of the proceedings against Pete, and was intimately familiar with the rules governing confidentiality of papers filed in Pete's case by Holzknecht, a prior member of her office.

89. Despite her foregoing knowledge, Atty Bailey-Roka directly involved herself in the distribution and disclosure of the confidential papers filed in Pete's case outside the Office of Disciplinary Counsel, to members of the public she knew would be likely to republish it, or otherwise use the information against Pete.

90. Atty Bailey-Roka's activities of soliciting grievances, and assisting grievants in drafting grievances, fall outside of her duties as disciplinary counsel, and are not activities which entitle her to protection by immunity.

91. Neither Pete nor Alisa consented to the disclosure of their private facts by Bailey-Roka.

92. Despite Pete's and Alisa's lack of knowledge or consent to any disclosure, Atty Bailey-Roka made the disclosures, in conscious disregard of their high offensiveness and the substantial certainty that the disclosure would cause harm to Pete and Alisa.

93. Atty Bailey-Roka's disclosure was an unlawful, public disclosure of private facts regarding Pete and Alisa, and the disciplinary action then pending against Pete.

94. Atty Bailey-Roka's improper disclosures caused Pete and Alisa to sustain damages.

95. Pete sustained harm to professional reputation, embarrassment, and income.

96. Alisa sustained harm to reputation, embarrassment, and income.

97. Plaintiffs are entitled to punitive damages, because Atty Bailey-Roka made the damaging disclosures deliberately, and in bad faith, and, in so doing, abused her position of authority and trust as the Virgin Islands Chief Disciplinary Counsel.

**Count V – Intentional Infliction of Emotional Distress, Pete & Alisa, as to Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his Individual Capacity**

98. All foregoing allegations are reasserted and realleged, as though fully set forth herein.

99. Atty Rohn and Atty Holzknecht intended to exploit Alisa's vulnerability, and need for representation in her divorce, for their own purposes.

100.      By his actions complained of herein, Atty Holzknecht maliciously hoped and intended to embarrass or distress Pete, and to force or bully him into discipline, causing suspension or loss of Pete's law license.

101.      By their actions complained of herein, Atty Rohn and the Rohn firm, which Rohn controls, maliciously hoped and intended to inflict severe emotional distress on Pete, to burden him with an attorney disciplinary action concerning his divorce, and to capitalize on the resulting distraction to obtain advantage in unrelated civil litigation against Pete, and to thereby derive pecuniary gain in the form of a lopsided settlement in the civil counterclaims against Pete.

102.      Neither Atty Rohn nor Atty Holzknecht allowed Alisa's right to confidential communication with her divorce lawyer, or Alisa and Pete's right to privacy with respect to Alisa's and Pete's private information, to deter them from their release of the content of confidential client communications with Alisa, outside of the representation.

103.      Alisa did not consent to the disclosure of the content of confidential client communications outside of the representation.

104.      Both Atty Rohn and Atty Holzknecht considered any damages or emotional distress their actions would inflict upon Alisa to be acceptable, collateral damage, justified by their end goal of bringing down Pete.

13

105.     Both Atty Rohn's and Atty Holzknecht's actions constituted an outrageous perversion and exploitation of an attorney's representative relationship to a client, to achieve selfish, personal objectives.

106.     Although Atty Holzknecht had been reaching out to Alisa since April, 2021, after Atty Rohn gave him her contact information, he waited until July 4, 2021 to disclose to Alisa that he was "Special Disciplinary Counsel," and was not connected in any way to Atty Rohn's office or Alisa's divorce.

107.     Atty Rohn and Atty Holzknecht deliberately deceived Alisa into providing private information she would never have disclosed, had she known it would be repurposed as Atty Rohn, the Rohn firm, and Atty Holzknecht intended.

108.     As a result of Atty Rohn, the Rohn firm, and Atty Holzknecht's foregoing, unauthorized disclosures, Alisa became extremely emotionally distraught, and experienced extreme stress, resulting in colitis, stomach pain, acid reflux, high anxiety, sleeplessness, embarrassment, anger, and humiliation.

109.     Atty Rohn's and Atty Holzknecht's unauthorized disclosures further caused Pete great emotional distress, resulting in high stress levels, anger, stomach aches, rapid heartbeat, heart palpitations, sleeplessness, low morale, distraction, difficulty concentrating, and a decrease in productivity on the job, loss of opportunity to earn income, and loss of enjoyment of life.

110.     Atty Holzknecht, whose job it was to protect the public, instead took actions that would harm Alisa, a member of the public.

111.     Atty Rohn, and the Rohn firm, were bound to protect the interests of their client, but instead betrayed and harmed Alisa.

112.     Atty Rohn's deliberate misuse of her position of trust as Alisa's attorney, and abuse and misuse of the attorney grievance system for a purpose it was not intended, and Atty Holzknecht's

deceit and abuse of his position of authority, demonstrate socially unacceptable behavior, with the degree of outrageousness required to be deserving of punitive damages against them, because of their abuse of their positions of trust.

**Count VI – Negligent Infliction of Emotional Distress, Alisa & Pete, as to Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his Individual Capacity**

113.    All foregoing allegations are reasserted and realleged, as though fully set forth herein.

114.    Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his individual capacity, deceived Alisa, under the guise of helping Alisa with her divorce actions from Pete in the Virgin Islands and Florida, when in reality they were using her to extract information which they intended to use to destroy Pete.

115.    Alisa merely sought a divorce, and otherwise continued to have a close relationship with Pete, and wanted no part of causing harm to Pete.

116.    Defendants Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his individual capacity, knew that their wrongful actions would cause their own client Alisa to experience serious financial harm and emotional distress, but, in callous disregard of the harmful consequences for Alisa, they took such actions anyway.

117.    The deceptive and exploitative actions by Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his individual capacity, had no place on the representation of Alisa, who had merely sought a divorce.

118.    Alisa suffered such emotional distress and severe anxiety, upon the recognition of the Defendants' complete betrayal and deception, that she became physically ill with colitis and related medical conditions.

119.    As a result of the Defendants' negligent and wrongful actions, Alisa suffered from the colitis, and severe stomach pains.  She also had heartburn, nausea, dizziness, sleeplessness, loss

of appetite, and the inability to keep down food, and her weight dropped to near 130 lbs., which was unhealthy and drastically underweight for her 5 ft. 10 in. height, conditions from which it required medical attention, and months of recuperative time, for her to recover.

120.    Atty Rohn's and Atty Holzknecht's unauthorized disclosures further caused Pete great emotional distress, resulting in high stress levels, anger, stomach aches, rapid heartbeat, heart palpitations, sleeplessness, low morale, distraction, difficulty concentrating, and a decrease in productivity on the job, loss of opportunity to earn income, and loss of enjoyment of life.

121.    The Defendants Atty Rohn, Lee J. Rohn & Associates, and Atty Holzknecht, in his official and individual capacities, are liable to Alisa and Pete for the physical and emotional damages which they caused, as well as punitive damages, because of the abuse of their positions of trust.

**Count VII - Violation of 42 U.S.C. § 1983, Infringement of Pete's Right to be Free from Unreasonable Searches, Guaranteed by the Fourth Amendment, as to Atty Rohn, Lee J. Rohn & Associates, LLC, and Atty Holzknecht, in his Individual Capacity**

122.    All foregoing allegations are reasserted and realleged, as though fully set forth herein.

123.    By disclosing Alisa's confidential client communications to Holzknecht, Atty Rohn and the Rohn firm acted ostensibly under color of territorial law, as an officer of the Virgin Islands Supreme Court, to report Pete's purported violations of Virgin Islands Rules of Professional Conduct to the ODC.

124.    Rohn, an attorney in practice since 1974, and the Rohn firm, knew that Alisa's right to client confidentiality overrode their duty to report any perceived attorney misconduct.

125.    Rohn and the Rohn firm's report of Alisa's confidential client communications to Holzknecht was done deliberately, in abuse of their position of trust, and in bad faith, driven by their intent to harm Pete.

126.    Atty Holzknecht ostensibly acted under color of territorial law, as Deputy Disciplinary Counsel of the Virgin Islands.

127.    Holzknecht knew that Rohn and the Rohn firm did not have a proper reason to disclose their client Alisa's confidential client communications.

128.    Despite Holzknecht's knowledge that Rohn and the Rohn firm's disclosure of confidential client communications was improper, Holzknecht did not report or address Rohn's and her firm's misconduct, which occurred in his plain sight.

129.    Instead, Holzknecht involved himself in the scheme with Rohn and the Rohn firm, extracted additional, confidential, adverse information about Pete from Alisa, and solicited Alisa to fill out and submit an attorney complaint against Pete.

130.    Holzknecht's foregoing acts, of involving himself in Rohn and the Rohn firm's unlawful scheme, demonstrate his improper motive, his bad intent, and the abuse of his position.

131.    Pete had a Fourth Amendment right to be free from unreasonable searches, guaranteed by the Fourth Amendment to the United States Constitution.

132.    Despite being an attorney, having a clear understanding of the meaning and significance of Constitutional rights, and being well aware that deprivation of Pete's Fourth Amendment right to be free from unreasonable searches was substantially certain to cause serious harm to Pete, Atty Holzknecht demonstrated a callous disregard of the harm his actions would cause to Pete, and conducted an unreasonable search of Pete's marriage by (1) accepting Alisa's confidential client communications which Rohn had improperly disclosed, and (2) communicating directly with Alisa about the marriage and the Florida divorce representation, and (3) soliciting Alisa to complete and submit an attorney complaint form against Pete.

133.    When Atty Holzknecht improperly disclosed and repurposed information contained in confidential client communications between Alisa and Atty Rohn, communicated with Alisa about the marriage, and solicited Alisa to file an attorney grievance against Pete, her husband, he invaded the privacy of Pete's marriage, and conducted an unreasonable search of it, deceptively

posing as an advocate for Alisa, he violated Pete's right to be free from unreasonable searches guaranteed by the Fourth Amendment to the United States Constitution.

134.     Atty Holzknecht actively conducted his search of Pete and Alisa's marriage by deceit, questioning Alisa, and misrepresenting to Alisa, by his acts and his omission of required disclosures, that he was acting in Alisa's best interests, when he was not.

135.     For his foregoing actions, not in connection with any pending grievance investigation or any pending case, Atty Holzknecht acted outside his jurisdiction, and engaged in grievance solicitation, an activity outside of his official duties, and was entitled neither to litigation privilege nor immunity.

136.     Atty Rohn's actions were not subject to litigation privilege, because they involved her independent disclosure of confidential client communications with Alisa, not legitimately connected with any court case other than the Florida divorce, and were against the rules of any jurisdiction governing attorney conduct.

137.     Atty Rohn's actions were not subject to witness immunity under any rules of ethics, because her disclosure of confidential client communications was in bad faith, and in violation of rules governing attorney conduct.

138.     When she invaded the privacy of Pete and Alisa's marriage, Atty Rohn pretended to be an advocate for Alisa, but instead abused her fiduciary duty to conduct an illegal search of Pete and Alisa's marriage to mine private data, for her own purposes and for pecuniary gain.

139.     When they deprived Pete of his Fourth Amendment right to be free from unreasonable search, Atty Rohn, the Rohn firm, and Atty Holzknecht violated 42 U.S.C. § 1983.

140.     The violative actions of Atty Rohn, the Rohn firm, and Atty Holzknecht were malicious, because of their dislike of Pete, and were driven by these attorneys' evil motives and common plan and intention to cause harm to Pete.

141.     Atty Holzknecht's foregoing actions were unsupportable, and clearly in excess of his jurisdiction as members of the Virgin Islands Office of Disciplinary Counsel.

142.     Atty Rohn's, the Rohn firm's and Atty Holzknecht's violation of the Fourth Amendment caused substantial harm to Pete, including the loss of opportunity to earn income due to time spent preparing his defenses against admissibility of the fruits of their unlawful search, the expenses to obtain evidence to prepare to defend himself from false accusations, severe emotional distress, worry, and embarrassment.

143.     Pete's severe emotional distress caused physical injury of stomach aches, heartburn, and heart palpitations.

144.     Pete is entitled to punitive damages, in amounts to be proven at trial.

145.     Pete is further entitled to the reasonable attorney's fees and costs expended to bring and maintain this action.

**Count VIII – Violation of 42 U.S.C. § 1983, Deprivation of Pete's Constitutional Right, Pursuant to U.S. Const. Art. I, Sec. 8, to Not be Subjected to Protectionist Policies Adverse to Non-Citizens of the Virgin Islands, as to Atty Bailey-Roka and Atty Holzknecht, in their Individual Capacities**

146.     All foregoing allegations are reasserted and realleged, as though fully set forth herein.

147.     Atty Tanisha Bailey-Roka and Atty Holzknecht, in deliberate abuse of their positions of authority as the Chief and Deputy officers of the Virgin Islands ODC, acted under color of Territorial law, and purported to act to enforce the Virgin Islands Supreme Court Rules governing attorney professional conduct.

148.     Other than Pete, the Virgin Islands ODC has never subjected an attorney to investigation pursuant to confidential information which ODC improperly obtained or improperly distributed.

149.     Although numerous Virgin Islands citizen attorneys have gotten divorced, the Virgin Islands ODC has not solicited attorney grievances from their spouses during their divorces.

150.    Although numerous Virgin Islands citizen attorneys have been the subject of confidential attorney grievance investigations, ODC has not distributed confidential materials concerning their cases to third parties, outside the ODC and the Board on Professional Responsibility.

151.    ODC has set up an adverse attorney disciplinary policy, applicable only to Pete, and not to attorneys who are Virgin Islands citizens, whereby ODC infiltrates the marriage relationship of a Florida couple in an effort to discover adverse information it can use in a grievance, and to solicit an attorney grievance from Alisa, his wife.

152.    Similarly, ODC has set up an adverse attorney disciplinary policy, applicable only to Pete, and not to attorneys who are Virgin Islands citizens, whereby ODC improperly disseminates confidential material outside the disciplinary system, relative to a Virgin Islands attorney disciplinary proceeding against a Florida citizen, tarnishing Pete's reputation.

153.    Through their foregoing actions, in violation of prohibitions contained in the Dormant Commerce Clause to the United States Constitution, Atty Bailey-Roka and Atty Holzknecht deliberately singled out and targeted Pete, as a member of the class of Virgin Islands attorneys who are Florida citizens, for adverse treatment policies, not applied to Virgin Islands citizens.

154.    Atty Bailey-Roka's and Atty Holzknecht's actions denied Pete equal protection, were unconstitutional, violate 42 U.S.C. § 1983, and caused damage to Pete.

155.    Atty Bailey-Roka's and Atty Holzknecht's violations caused Pete to sustain damage to his professional reputation, and caused him financial harm, as they required him to divert time, energy, and monies, which would otherwise have been available for productive, remunerative legal work, to rehabilitate his reputation, and to defend himself.

156.    Pete is statutorily entitled to further award of the reasonable attorney's fees and costs expended to bring and maintain the instant action, as well as punitive damages.

**Count IX – Violation of 42 U.S.C. § 1985, Conspiratorial Deprivation of Pete's Rights of Equal Protection and the Earned Privilege to Practice Law in the Virgin Islands, as to Atty Rohn, the Rohn firm, and Atty Holzknecht and Atty Bailey-Roka, in their Individual Capacities**

157.     All foregoing allegations are reasserted and realleged, as though fully set forth herein.

158.     By their foregoing actions, Defendants Attys Rohn, Holzknecht, and Bailey-Roka colluded, cooperatively worked together, conspiring in a common plan to discredit, harm, and subject Pete to spurious disciplinary charges, treatment to which similarly situated Virgin Islands Attorneys are not subjected.

159.     Atty Rohn acted in furtherance of the conspiracy when she emailed Alisa's confidential client communications, containing adverse information about Pete, to Holzknecht.

160.     The Rohn firm acted in furtherance of the conspiracy, and took the same actions as Atty Rohn, because Atty Rohn involved her firm in Alisa's divorce, and practices law through the Rohn firm, and the Rohn firm is a law firm under Atty Rohn's sole dominion and control.

161.     Atty Holzknecht acted in furtherance of the conspiracy when he emailed Alisa's confidential client communications, containing adverse information about Pete, to Bailey-Roka.

162.     Atty Bailey-Roka acted in furtherance of the conspiracy when she, with full knowledge of the actions of her subordinate Atty Holzknecht, not only failed to intervene, but also corresponded with Alisa herself.

163.     The objective of the conspiracy was to solicit an attorney grievance against Pete from Alisa, his wife.

164.     Upon information and belief, no Virgin Islands licensed attorney other than Pete has been subjected by the ODC and other, co-conspiring attorneys, to having his spouse approached by disciplinary authorities, the way Attys Rohn, Holzknecht, and Bailey-Roka approached Alisa, using their positions as attorneys to engender trust, and deceptively, reprehensibly, and

atrociously abusing that trust for the purpose of extracting from the spouse confidential information concerning the attorney, in the guise of acting as her advocates in a divorce, and soliciting the spouse to file an attorney grievance.

165.    Defendants' foregoing actions singled out Pete, a Florida citizen, from other Virgin Islands attorneys, for adverse treatment, and deprived Pete of equal protection of the laws with respect to his earned privilege of a license to practice law in the Virgin Islands.

166.    Defendants' foregoing actions violated 42 U.S.C. § 1985.

167.    As a result of the Defendants' actions in violation of 42 U.S.C. § 1985, Pete sustained nominal damages, and other damages, including financial harm, lost income, loss of the opportunity to earn income due to having to prepare to defend himself from false accusations, as well as severe emotional distress, anger, anxiousness, sleeplessness, and embarrassment.

168.    The severe emotional distress caused Pete physical injury, including persistent stomach aches, heartburn, and acid reflux.

169.    Because the Defendants' actions were malicious and deliberate, and arose out of an evil motive and intention to cause harm to Pete, they are deserving of punitive damages.

170.    Pete is further entitled to the reasonable attorney's fees and costs expended to bring and maintain this action.

**Count X – Defamation *Per Se*, Pete, as to Atty Rohn, the Rohn firm, and Atty Holzknecht, in his Individual Capacity**

171.    All foregoing allegations are reasserted and realleged, as though fully set forth herein.

172.    Atty Rohn published false and defamatory statements about Pete by email to Atty Holzknecht, then a member of the Virgin Islands ODC, in Missouri.

173.    Atty Rohn published the false and defamatory statements about Pete to Atty Holzknecht with malice, deliberately sending them to a member of the Virgin Islands ODC, because she intended them to cause harm to Pete, and to Pete's professional reputation and license.

174.    Atty Rohn involved the Rohn firm in her scheme, by sending the false and defamatory statements about Pete through the Rohn firm's email system.

175.    Atty Rohn knew that her disclosure of confidential communications with her client, Alisa, and her publication to Atty Holzknecht of false and defamatory statements based upon those communications, were prohibited by the rules of professional conduct governing attorneys.

176.    Atty Holzknecht republished Atty Rohn's false and defamatory information about Pete, and published his own false and defamatory statements about Pete, to Atty Bailey-Roka and Alisa, in Florida.

177.    Atty Holzknecht published his own, and republished Atty Rohn's false and defamatory statements about Pete to Atty Bailey-Roka with malice, deliberately sending them to the Virgin Islands Chief Disciplinary Counsel, because he intended them to cause harm to Pete, and to Pete's professional reputation.

178.    Atty Holzknecht knew that his republication, to Atty Bailey-Roka and Alisa, of the false and defamatory statements provided by Atty Rohn, and publication of his own statements about Pete, based upon Atty Rohn's confidential client communications, were prohibited by the rules of professional conduct governing attorneys.

179.    Atty Rohn, the Rohn firm, and Atty Holzknecht each published their false and defamatory statements about Pete with no prior fact checking, as their duty required, and with reckless disregard as to their falsity.

180.    Atty Rohn's and Atty Holzknecht's false and defamatory statements about Pete were made without privilege, as they were not made in connection with any case or investigation, and they disclosed confidential client information.

181.    Atty Holzknecht's false and defamatory statements about Pete were not entitled to immunity, because at the time he made them, he was soliciting a grievance from a member of the public, which is not a protected activity, and was not engaged in receiving, evaluating, investigating, or prosecuting a related attorney grievance.

182.    Atty Rohn's and Atty Holzknecht's false and defamatory statements about Pete included repeat spousal abuse, which is a felony.

183.    Atty Rohn's and Atty Holzknecht's false and defamatory statements were made with malice, because of their evil motive and intent to harm Pete, and because of their dislike of him.

184.    Committing felonies is incompatible with Pete's profession as a Virgin Islands attorney, which requires good moral character.

185.    Atty Rohn's, the Rohn firm's, and Atty Holzknecht's false and defamatory statements about Pete constituted defamation *per se.*

186.    The Defendants' defamation *per se* against Pete caused damage to Pete.

187.    Pete is entitled to presumed, or nominal damages.

188.    Pete's damages also include damage to his personal and professional reputation, and loss of income from his law practice, because of the Defendants' defamation.

189.    Pete is entitled to compensation, because the defamation caused him to spend many hours preparing to defend himself from false accusations, rather than in productive, remunerative legal work.

190.    As a result of Plaintiffs' defamation, Pete suffered severe emotional distress, including anxiety, embarrassment, anger.

191.    Pete's emotional distress was so severe that it caused physical injury, including constant stomach aches, heartburn, and acid reflux.

192.    Defendants' actions were intentional and deliberate, and entitle Pete to punitive damages.

**Count XI – Defamation by Implication, Pete, as to Atty Rohn and Lee J. Rohn & Associates, LLC, and Atty Holzknecht, in his Individual Capacity**

193.    All foregoing allegations are reasserted and realleged, as though fully set forth herein.

194.    Not all of the information Alisa provided to Atty Rohn and Atty Holzknecht about Pete was false.

195.    However, without verifying any of the information Alisa provided to them, Atty Rohn and Atty Holzknecht deliberately applied a pejorative spin to the true information, to create the false impression that Pete was dishonest, violent, and untruthful.

196.    Atty Rohn and Atty Holzknecht calculated and intended to create the false impression that Pete was a person of bad moral character.

197.    Atty Holzknecht maliciously hoped to use the false impression against Pete, to convince authorities that Pete needed attorney discipline, and was not deserving of the privilege to practice law in the Virgin Islands.

198.    Atty Rohn maliciously hoped to use the false impression against Pete, to portray Pete as a disgraced attorney, to achieve advantage in civil litigation against Pete, for pecuniary gain.

199.    Atty Rohn's and Atty Holzknecht's defamation of Pete by implication caused Pete to suffer damages.

200.    Pete's damages include loss of reputation, the opportunity lost to earn income, because Pete has had to divert his attention and devote substantial time to defending himself, rather than in productive, remunerative legal work.

201.　　The malicious manner in which Atty Holzknecht and Atty Rohn sought to create the false impression that Pete was a wife beater and a felon, involving abuse of their positions of trust to obtain disclosure of confidential, improperly obtained information from Alisa, qualifies for punitive damages.

## Count XII – Abuse of Process, Pete, as to Atty Rohn and Lee J. Rohn & Associates, LLC, and Atty Holzknecht, in his Individual Capacity

202.　　All foregoing allegations are reasserted and realleged, as though fully set forth herein.

203.　　After speaking with Alisa, as her counsel, without Alisa's knowledge or consent, Atty Rohn deliberately sent ODC confidential, adverse information obtained from Alisa about Pete, intending to cause an attorney grievance to be initiated against Pete.

204.　　Atty Rohn did the following actions with the intention and expectation that her actions would discredit Pete, and provide advantage against Pete in civil litigation in the Virgin Islands, and increase the likelihood of an outcome favorable to Atty Rohn, which would provide Atty Rohn pecuniary gain.

205.　　Atty Rohn's foregoing actions constituted a perversion of the attorney disciplinary system, and misuse of disciplinary procedures for a purpose for which they were not intended.

206.　　Like Atty Rohn, Atty Holzknecht disclosed and misappropriated confidential communications from Alisa relative to a divorce action, sending them to Chief Disciplinary Counsel, using information in the divorce action for a purpose it was not intended, hoping and intending to obtain an attorney grievance against Pete, and to get discipline imposed against Pete.

207.　　Atty Holzknecht abused his position of Deputy Disciplinary Counsel, which exists to protect the public, and completely perverted the attorney disciplinary apparatus, by using it to target and cause harm to Pete.

208.　　Atty Rohn and the Rohn firm abused their position of trust as Alisa's legal counsel.

209.    Atty Rohn's and Atty Holzknecht's actions were wrongful, and an abuse of process.

210.    Atty Rohn's and Atty Holzknecht's actions caused damage to Pete, including damage to professional reputation, loss of income opportunity due to hours spent preparing to defend himself rather than in productive, remunerative legal work, expenses to obtain evidence to prepare to defend himself from false accusations, and emotional distress, embarrassment, nominal damages, punitive damages, and attorney's fees, in amounts to be proven at trial.

**Count XIII – Declaratory and Injunctive Relief, for Pete & Alisa, as to Atty Rohn, the Rohn firm, and Atty Holzknecht and Atty Bailey-Roka, in their Official and Individual Capacities**

211.    All foregoing allegations are reasserted and realleged, as though fully set forth herein.

212.    Atty Rohn and the Rohn firm, by their foregoing actions, deliberately betrayed their positions of trust, and perverted their proper role as advocates in representing a client, Alisa, by exploiting and re-purposing the representation for their own, adverse interests against Pete, in pursuit of personal, pecuniary gain.

213.    Atty Holzknecht, and Atty Bailey-Roka purposefully abused their positions of authority as disciplinary counsel, abandoning their roles as the impartial recipients, investigators, and processors of complaints against attorneys, and instead, motivated by malice, targeted Pete, an individual they dislike, by accepting and publishing unlawfully obtained confidential information, soliciting grievances, and impermissibly assisting others in filing them.

214.    Pete and Alisa are entitled to a declaratory judgment, confirming that the actions of Atty Rohn and Lee J. Rohn & Associates, LLC were wrongful, malicious, in bad faith, in violation of ABA Model Rules of Professional Conduct, and unbecoming of the legal profession.

215.    Pete and Alisa are further entitled to a declaratory judgment, confirming that the actions of Atty Holzknecht and Atty Bailey-Roka toward Pete and Alisa were wrongful, in bad faith, and in violation of their duties as attorney disciplinary authorities and the ABA Model Rules.

216.     Pete and Alisa are further entitled to injunctive relief, requiring Atty Rohn, the Rohn firm, and Atty Holzknecht and Atty Bailey-Roka to cease and desist from all further contact with Alisa, and from soliciting or filing additional, spurious attorney complaints against Pete.

WHEREFORE Plaintiffs Peter James Lynch and Alisa Marie Lynch respectfully request that this Honorable Court issue a Declaratory Judgment, enjoin these Defendants from further contact with Alisa, or from soliciting or filing additional, spurious complaints against Pete, and award Judgment in favor of the Plaintiffs against Defendants in the amounts below, plus costs and reasonable attorney's fees:

1. Rohn, $ 1M;
2. Lee J. Rohn & Associates, LLC, $ 1M;
3. Holzknecht, in his Individual Capacity, $ 1M;
4. Bailey-Roka, in her Individual capacity, $ 1M;
5. Punitive damages, $ 5M;

September 20, 2022                         Respectfully submitted,

Alisa M. Lynch, *pro se*
3715 McBroom Street
Sebastian, FL 32976
(772) 300-1287
alisareich12@gmail.com

Peter J. Lynch, *pro se*
3715 McBroom Street
Sebastian, FL 32976
(340) 201-5955
peterjameslynch@msn.com

**Verification**

I hereby certify, under penalties or perjury, that on this 20th day of September, 2022, I reviewed the foregoing complaint, and the allegations it contains are true, accurate, and complete, to the best of my knowledge and recollection.

_____

Peter J. Lynch,
aka Peter James Lynch

State of Florida
~~Territory of the Virgin Islands~~                    )
~~Division of St. Thomas and St. John~~                )          ss:
County of Indian River

Before me this 20th day of September, 2022 appeared Peter J. Lynch, who produced satisfactory identification, and executed the foregoing in my presence.

_____

Notary Public

MARILYN WRIGHT
Notary Public-State of Florida
Commission # GG 316034
My Commission Expires
May 07, 2023

29

## Verification

I hereby certify, under penalties or perjury, that on this 20th day of September, 2022, I reviewed the foregoing complaint, and the allegations it contains are true, accurate, and complete, to the best of my knowledge and recollection.

_____
Alisa M. Lynch,
aka Alisa Marie Lynch

State of Florida

~~Territory of the Virgin Islands~~                    )

~~Division of St. Thomas and St. John~~        )        ss:

County of Indian River

Before me this 20th day of _September, 2022_ appeared Alisa M. Lynch, who produced satisfactory identification, and executed the foregoing in my presence.

_____
Notary Public

MARILYN WRIGHT
Notary Public-State of Florida
Commission # GG 316034
My Commission Expires
May 07, 2023



**UNITED STATES POSTAL SERVICE** ®

PRIORITY ®
MAIL



UNITED STATES POSTAL SERVICE.

P    US POSTAGE PA

$21.50

PRIORITY MAIL®

EXPECTED DELIVERY DAY: 09/27/22

SHIP
TO:    101 S US HIGHWAY 1
FORT PIERCE FL 34950-4209

USPS TRACKING® #



9505 5114 7094 2268 2661 74

FROM:
LYNCH, Peter & Alisa
3715 McBroom ST
Sebastian, FL 32976

TO:

Clerk of Court
Alto Lee Adams, Sr
U.S. Courthouse
101 SOUTH US HWY 1
Room # 1016
Ft. Pierce, FL 34950

LARGE FLAT RAT
FOR DOMESTIC AND INTERNA

Pro Se Filing
New Civil Case



LFRB June 2020
ID: 12 x 12 x 5 1/2